## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO: 17-114** |
| v. | * | **SECTION: "B"** |
| **ARMSTEAD KIEFFER** | * | |
| * * * | | |

## UNITED STATES' GLOBAL MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL/NEW TRIAL

**NOW INTO COURT** comes the United States of America, appearing herein through the undersigned Assistant United States Attorney, and files this Global Memorandum in Opposition to Defendant Armstead Kieffer's Motions for Judgment of Acquittal/New Trial. *See* Rec. Docs. 161 & 162. For the reasons that follow, the motions should be denied.

## PRELIMINARY STATEMENT

The evidence adduced at trial easily supports the jury's conclusions. Most obviously, Deltoine Scott, who participated in both robberies, testified about how he and the Kieffers planned and executed the two robberies. His testimony was detailed and credible and left no doubt as to his co-conspirators' identities and roles: Jerome participated as a gunman in both robberies and Armstead was the lookout in the second robbery/murder. That testimony—standing alone—is sufficient to support the verdict.

In addition to Scott's testimony, there was significant corroborating evidence. For the 2017 robbery/felony murder, the corroborating evidence included:

- Surveillance footage showing Jerome Kieffer casing the armored car in the weeks prior to the robbery from his apartment, which directly overlooked the crime scene;

- Testimony from Scott's grandfather, Charles Mitchell, about Scott and Jerome Kieffer picking up the extremely unique getaway vehicle hours before the robbery;

- Cell site evidence confirming that Scott and Jerome Kieffer were in fact near Charles Mitchell's house at the time when the getaway vehicle was picked up;

- Surveillance footage showing Scott in the getaway vehicle following Jerome Kieffer in his Infiniti on the way from Charles Mitchell's to the scene of the robbery;

- Cell site evidence showing Scott and Jerome Kieffer arriving at the scene of the robbery;

- Surveillance footage from Jerome Kieffer's apartment complex showing Scott and Jerome Kieffer arriving in Jerome Kieffer's Infiniti a few hours before the robbery and Scott wearing the same shoes he wore hours later during the robbery;

- Cell site records showing Jerome Kieffer and Armstead Kieffer using the cell tower that serviced the Campus Federal Credit Union in a series of calls beginning about an hour and a half before the robbery and continuing until just after the robbery ended;

- Surveillance footage showing Armstead Kieffer's Nissan Sentra circling the Campus Federal waiting for the armored car at the same time his phone was using the cell tower;

- Surveillance footage showing that the robbery was timed and photographs showing that Jerome Kieffer and Scott could not see the armored car from where they were waiting, and therefore must have had a lookout;

- Phone records showing Jerome Kieffer and Armstead Kieffer on a call that began shortly after the armored car arrived at the scene and that ended just as the guard stepped out of the armored car carrying a money bag and the robbery began;

- Ballistic evidence showing the robbers fired weapons of the same caliber as the weapons that Scott and Jerome Kieffer bought on the same day at Academy Sports;

- Eye witness testimony that the robbers fled in a unique black and white truck that Charles Mitchell identified as the truck Scott and Kieffer borrowed earlier that day;

- Surveillance footage from four different businesses showing the black and white truck fleeing the scene of the robbery; and

- Extensive witness and documentary evidence tying Armstead Kieffer to the red Nissan Sentra that was circling the Campus Federal Credit Union.

Armstead Kieffer's motion seeking acquittal ignores this mountain of evidence against him.

The motion does not seriously contend that the evidence detailed above is legally insufficient. Instead, Kieffer argues that certain witnesses not identifying him and/or the lack of video evidence showing him somehow calls into question the verdict. Rec. Doc. 162-1 at 2. Those

2

arguments, however, are not a proper basis upon which to take the extraordinary step of vacating the defendant's conviction for insufficient evidence. The jury's verdict was amply supported by evidence that proved beyond a reasonable doubt that the defendants were guilty.

The motion for new trial should also be denied. While Kieffer argues that the jury questioning justifies a new trial, governing case law specifically permits such questioning, and the Court made clear that had the jurors not asked the questions themselves, the Court would have done so. Further, even were Kieffer correct that the jury questions were improper generally, he fails to identify any particular question that elicited information that was prejudicial to him. Nothing about the questions asked undermines the verdict at all, much less in some way that would warrant the exceptional remedy of a new trial in a case with such overwhelming evidence of guilt.

## LEGAL STANDARD

### I. Judgment of Acquittal

This Court's "review of the sufficiency of the evidence is highly deferential to the verdict." *United States v. Moreno–Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (internal quotation marks omitted). In determining if there was sufficient evidence to support a conviction, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Valle*, 538 F.3d 341, 344 (5th Cir. 2008) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (internal quotation marks omitted). The evidence should not be examined in isolation, but as part of the totality of all of the evidence at trial. *See United States v. Vergara*, 687 F.2d 57, 61 (5th Cir. 1982) ("While each piece of evidence, standing alone, may have been susceptible of innocent interpretation, we are convinced that the jury reasonably could have concluded that the evidence, when examined in the aggregate, sufficed to

[support the defendant's conviction]."); *see also United States v. Thomas*, 627 F.3d 146, 154 (5th Cir. 2010) ("Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof."). When reviewing a motion for judgment of acquittal, "[a]ll reasonable inferences must be drawn, and all credibility determinations made, in the light most favorable to the verdict." *United States v. Villarreal*, 324 F.3d 319, 322 (5th Cir. 2003) (citing *United States v. Hull*, 160 F.3d 265, 272 (5th Cir. 1998)). "In effect, the court assumes the truth of the evidence offered by the prosecution." *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997).

Moreover, "'[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt,'" *Moreno-Gonzalez*, 662 F.3d at 372 (quoting *United States v. Lage*, 183 F.3d 374, 382 (5th Cir. 2001)), "'and any conflict in the evidence must be resolved in favor of the jury's verdict,'" *id*. (citing *United States v. Duncan*, 919 F.2d 981, 990 (5th Cir. 1990)); *see also McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (per curiam) ("a reviewing court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'") (internal quotation marks omitted). That is because the jury "retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001).

"[W]hat the fact finder is permitted to infer from the evidence in a particular case is governed by a rule of reason, and . . . fact finders may properly use their common sense and evaluate the facts in light of their common knowledge of the natural tendencies and inclinations of human beings." *United States v. Surtain*, 519 F. App'x 266, 277 (5th Cir. 2013) (unpublished)

4

(quoting *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir. 1989)).  Thus, even if the defendant presents a plausible explanation for his actions, that is not enough to upset the verdict because "a jury is not required to accept any alternative explanation."  *United States v. Winkler*, 639 F.3d 692, 700 (5th Cir. 2011); *see also United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999) (noting that a jury is "free to choose among reasonable constructions of the evidence").

### II. New Trial

The district court "may ... grant a new trial if the interest of justice so requires."  Rule 33(a).  A motion for new trial "should be exercised with caution, and the power to grant a new trial ...should be invoked only in exceptional cases...."  *United States v. Robertson*, 110 F.3d 1113, 1120 n.11 (5th Cir.1997) ("It has been said that on such a motion [for new trial] the court sits as a thirteenth juror.  The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial ... should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict."), citing *United States v. Sinclair,* 438 F.2d 50, 51 n.1 (5th Cir. 1971).  Only "[w]here a court finds that a miscarriage of justice may have occurred at trial should a [new trial be granted] in the interests of justice." *Id*.

### ARGUMENT

### I. The Evidence Adduced at Trial was Sufficient to Support the Verdict.

Armstead Kieffer does not (and could not) seriously contest whether the evidence against him was sufficient grounds for a reasonable jury to return a verdict of guilt.  Rather, he seeks to argue that the lack of certain evidence—namely witness testimony identifying Kieffer and/or video evidence showing him inside the Nissan Sentra—somehow calls into question the verdict.

Kieffer initially contends that "[i]n the 2015 robbery there was not a single witness that stated Armstead Kieffer was at the scene of the robbery."  Rec. Doc. 162 at 1-2.  That is true, but

entirely beside the point.  Armstead Kieffer was not charged with participating in the 2015 robbery, and the government never alleged he was on the scene of the 2015 robbery.  Armstead was convicted by the jury of being the lookout during the 2017 robbery.  Nothing about the 2015 robbery or evidence related thereto undermines the evidence supporting the jury's conclusion that Armstead Kieffer was guilty of participating in the 2017 robbery.

None of the points Armstead Kieffer raises about the 2017 robbery undermine the jury's verdict.  He contends that eyewitnesses from the scene did not identify him and points out that the property manager for Jerome Kieffer's building did not identify Armstead Kieffer in any of the surveillance footage.  He also notes that the Campus Federal surveillance system that showed the Nissan Sentra did not provide any footage showing it was Armstead in the car.  Lastly, Armstead Kieffer points out that Charles Mitchell—whose truck was used in the 2017 robbery—did not say Armstead was ever in Mitchell's truck or that Armstead was involved in procuring the truck.

To the degree Armstead's observations are relevant at all, they are not a basis to reverse the jury's verdict.  Whatever certain witnesses may have said or not said about Armstead does not call into question the sufficiency of the evidence supporting the verdict.  During the trial, Deltoine Scott testified that Armstead Kieffer acted as the lookout during the 2017 robbery and was on the phone with Jerome Kieffer telling Jerome and Scott when to begin the robbery.  His testimony was amply supported by corroborating video and phone records.  Further, at this stage of the proceedings, the Court must assume the truth of Scott's testimony, *see Robertson*, 110 F.3d at 1117 (In Rule 29 context, "the court assumes the truth of the evidence offered by the prosecution."), as there is no suggestion that Scott's testimony was fanciful or otherwise so incredible as to warrant rejecting it.  That testimony alone—even without the large amount of corroborating evidence present in this case—was sufficient to sustain the verdict.  *See* Fifth Circuit

Pattern Criminal Instruction 1.15 Accomplice—Co-Defendant ("[T]he testimony of [an accomplice] may alone be of sufficient weight to sustain a verdict of guilty. . . ."). Armstead Kieffer's arguments are beside the point because they fail to call into question evidence that was sufficient to support the verdict as a matter of law.

**II. Armstead Kieffer is Not Entitled to a New Trial.**

Although Armstead Kieffer bases his motion for new trial on the Court allowing questions from the jury, the law cited in his own memorandum makes clear that allowing jurors to ask questions is permissible and best left to the discretion of the trial judge. Here, the jury was not allowed to directly question witnesses about topics that had not been screened by the Court. Rather, the jurors were allowed to write questions and pass them to the Court for review, with the Court deciding if the question was appropriate and, if necessary, reframing it to comply with the Rules of Evidence. For the last three days of trial, the Court allowed counsel for both parties to review all questions before the Court asked them to the jury. These practices comply with the governing case law. *See United States v. Callahan*, 588 F.2d 1078, 1086 (5th Cir. 1979).

Aside from general allegations of an infringement of his right to a fair trial, Kieffer fails to identify any specific questions that were improper or that elicited testimony that was so damaging to his defense as to turn the trial into a miscarriage of justice. *See United States v. Sykes*, 614 F.3d 303, 313 (7th Cir. 2010) (finding error where jurors were allowed to ask questions directly, but not reversing because the questioning did not cause impropriety or impact verdict). As detailed above, the evidence of guilt was overwhelming, and this is not an "exceptional case" where the evidence "preponderates heavily against the verdict." *Robertson*, 110 F.3d at 1120 n.11. The questions

from the jurors had little to no impact on the trial and certainly did not result in a miscarriage of justice that would warrant the exceptional remedy of a new trial in the interest of justice.[1]

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Armstead Kieffer's Motions for Judgment of Acquittal/New Trial.  *See* Rec. Docs. 161 & 162.

Respectfully submitted,

PETER G. STRASSER
UNITED STATES ATTORNEY

/s/ David Haller
DAVID HALLER
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, LA 70130
Telephone:  (504) 680-3000
Facsimile: (504) 589-4390

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all defense counsel of record.

/s/ David Haller
DAVID HALLER
Assistant United States Attorney

---

[1] Armstead Kieffer also references his unsuccessful motion to suppress, Rec. Doc. 161-1 at 4-5, but argues nothing more than that he should be given a new trial if the Appellate Court believes the evidence should have been suppressed.